U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 0 6 2017

TONY R. MOORE, CLERK
BY _____
                    DEPUTY

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FABIAN R. STRAUSS | * | |
|     Plaintiff, | * | CIVIL ACTION NO.   6:17-cv-0235 |
| VERSUS | * | |
| | * | |
| THE BOARD OF SUPERVISORS | * | JUDGE |
| FOR THE UNIVERISTY OF | * | |
| LOUISIANA SYSTEM, UNIVERSITY | * | MAGISTRATE |
| OF LOUSIANA-LAFAYETTE, AND | * | |
| CAROL LANDRY, IN HER | * | |
| INDIVIDUALLY AND OFFICIAL | * | |
| CAPACITY AS DIRECTOR OF OFFICE | * | |
| OF DISABILITY SERVICES FOR | * | |
| UNIVERSITY OF | * | |
| LOUISIANA-LAFAYETTE | * | |
| Defendant | * | |
| | * | |
| | * | JURY TRIAL DEMANDED |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>COMPLAINT</u>

NOW INTO COURT, in proper person, comes Fabian R. Strauss, plaintiff herein, who respectfully alleges and avers the following:

### JURISDICTION AND VENUE

1.

Subject matter jurisdiction of this Honorable Court is based upon federal question jurisdiction pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12131, *et seq.*, with this Court having supplemental jurisdiction over all other claims asserted herein that are founded in the law of the State of Louisiana.

2.

Venue is proper in this Court because the entity against whom this action has been brought is domiciled in East Baton Rouge Parish, Louisiana, which is located in the Middle District of the United States District Courts of Louisiana.

1

**PARTIES**

3.

Plaintiff, Fabian R. Strauss (hereinafter "Strauss"), a person of the full age of majority, resides and is domiciled in the Parish of Lafayette,  State of Louisiana.

4.

Made defendant herein is the Board of Supervisors for the University of Louisiana System (hereinafter "Board of Supervisors" or "Defendant"), a corporate entity organized pursuant to the laws of the State of Louisiana, having its principal place of business in East Baton Rouge Parish.

**FACTUAL BACKGROUND**

5.

On or about August 2013, Strauss, who is an African-American male, began attending the University of Louisiana Lafayette ("ULL") as a biology major.

6.

In December of 2012, at the age of sixteen, Strauss was diagnosed as having permanent severe bilateral sensorineural hearing loss.  Strauss's medical condition resulted in the impairment of his hearing in both ears, for which he receives medical treatment from an audiologist, Dr. Joseph Guillory.

7.

As a result of his impairment, Plaintiff Strauss has poor speech discrimination skills and is dependent upon lip reading and hearing aids for normal, everyday communication.

2

8.

Prior to the start of the fall 2013 semester, Strauss and his mother, Souvana Anzenne, presented a letter to the Office of Disability at ULL from Strauss's treating audiologist, which requested reasonable accommodations to assist Plaintiff in succeeding academically, as well as ensure that he was provided housing with proper safety systems for the hearing impaired.  The requests expressed in the correspondence included:

    a.   housing for the hearing impaired;

    b.   access to instructors' notes;

    c.   a professional note taker;

    d.   preferential front row seating in all classes;

    e.   a personal tutor;

    f.   an interpreter or captionist; and

    g.   assistive technology for deaf students.

### *Failure to Accommodate: Housing*

9.

In addition, prior to the fall 2013 semester, Strauss contacted the ULL Office of University Housing by telephone and explained that he was hearing impaired and had proper documentation from his audiologist to support and confirm his condition, and requested suitable housing designed to accommodate his impairment pursuant to the Americans with Disabilities Act ("ADA").

10.

In response, an agent of ULL who was employed in the Office of University Housing told Strauss that the Office of University Housing could not accommodate him.

11.

During the spring 2014 semester, a fire erupted in the Conference Center—a co-ed residence hall on ULL's campus where Strauss resided—at about 1:00 a.m. in the morning during the week.

12.

Strauss, who was asleep in his dorm room when the fire broke out, did not awaken and consequently did not evacuate because he was unable to hear the fire alarm.  Fortunately, the fire was contained and Strauss was not harmed in the incident.

13.

During the week of final examinations in the spring 2014 semester, Strauss needed to move into another building on campus and chose to relocate to the Legacy Park Apartments, which are associated with ULL.

14.

Strauss contacted the Legacy Park Assistant Director of Facilities, Kyle Smith, and informed him that he was hearing impaired and he was in need of ADA accommodation, as supported by documentation from his treating physician.  He also related the fire incident that occurred at the Conference Center.

15.

The Director of Facilities refused to provide any accommodations, stating that Strauss would not need any special devices installed because each room has a fire alarm that works well and they are loud enough to alert all residents, regardless of any hearing impairment.

*Failure to Accommodate: Academic Aides*

16.

In response to his request for accommodations to assist in completing his academic obligations, Strauss was initially provided with student note takers, but was denied the assistance of a professional note taker.

17.

After complaining to Dr. Carol Landry, Director of ULL's Office of Disability Services, that his student note takers were not recording all of the necessary information from his class lectures, during the fall 2014 semester, Strauss renewed his request for a professional note taker or captionist.  Landry failed or refused to take corrective action.  Strauss continues to receive deficiet note taking and captionist services through the day of the filing of this Complaint.

18.

While Strauss was still only provided student note takers, in or about October 2014, Strauss was assigned a professional captionist; however, more difficulty arose because the captionist was off-site and had to observe Strauss's classes via Skype, an online video communication program, thus limiting the captionist's ability to perform the tasks Strauss needed performed to have any chance of succeeding in his classes.

19.

In particular, Strauss informed Dr. Landry that he had difficulty maintaining an internet connection with his captionist, the captionist's transcript often did not correlate with the instructor's speech, and the captionist could not hear students' comments and therefore could not transcribe them.  However, Dr. Landry told Strauss that there was nothing she could do to address these technical challenges.

20.

Over the course of the next year, Plaintiff struggled with complications associated with his assigned captionists who could not provide him with adequate assistance relative to his needs, including, but not limited to, both accuracy and punctuality which adversely affected Strauss's studying and grades.

21.

Plaintiff Strauss was advised to undergo another medical evaluation and re-petition for reasonable accommodations before filing suit because Defendant changed their administrative personnel.

22.

On February 5, 2016, Strauss' audiologist, Dr. Guillory, again submitted a letter to Dr. Landry in support of Strauss' request for academic adjustment, auxiliary aid, or service modifications due to his disability.

23.

In the February 5, 2016 correspondence, Dr. Guillory reiterated Strauss' medical condition and requested reasonable accommodations including:

 a. preferential front row seating in all classes;

 b. a professional note taker;

 c. access to instructors' notes;

 d. a personal amplification system for each class;

 e. ADA housing for hearing impaired individuals;

 f. a personal tutor;

 g. an interpreter or captionist; and

 h. assistive technology for deaf students.

6

Although Plaintiff persistently, and regularly requested appropriate accommodations for his disability, his requests were consistently denied by Dr. Landry.

24.

Plaintiff has consistently provided notice to Landry through email, phone, and in person of deficiencies in the accommodations that have been provided.

25.

In response to plaintiff Strauss consistently providing notice of deficiencies, Vice President Cottonham threatened to terminate Strauss's notetaking services.

26.

Additionally, Dean Perez threatened to terminate accommodations if Strauss continues to seek legal counsel and accused Strauss of being "crazy." Strauss was then directed to direct all emails to Dean Perez directly, rather than to the Office of Disability Services. Strauss was further accused of being belligerent and told by Dean Perez that she would not be "as nice" and again disparaged Strauss for engaging legal counsel.

**Count I: Discrimination Based on Disability**

27.

As alleged herein, Defendant has engaged in actions and practices constituting violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12131, *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* including, but not limited to, failure to reasonably accommodate Strauss's hearing disability.

28.

According to Title II of the ADA and Section 504 of the Rehabilitation Act, no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or

be subjected to discrimination under any program or activity that receives Federal financial assistance. Defendant, as an entity that receives Federal financial assistance, had an obligation to provide Plaintiff Strauss, who because of his hearing impairment qualifies as an individual with a disability under the cited provisions, with reasonable accommodations.

29.

Due to Defendant's failure to perform this duty, Plaintiff has endured conditions detrimental to his academic performance and has also suffered from anxiety and distress.

30.

Because irreparable injury, loss, and damage is likely to result, to protect Plaintiff's rights guaranteed under the ADA and Section 504 of the Rehabilitation Act, Plaintiff requests that this Honorable Court issue an injunction, enjoining Defendants from further denying reasonable accommodations from Plaintiff. Unless enjoined, Plaintiff Strauss' education will be irretrievably harmed and his guaranteed rights and privileges under the ADA and Section 504 unlawfully impinged and restricted.

**JURY DEMAND**

31.

Plaintiff demands trial by jury on all issues so triable herein.

WHEREFORE, Plaintiff, Fabian R. Strauss, prays that Defendant, Board of Supervisors for the Louisiana System, be duly cited and required to appear and answer Plaintiff's Complaint and Jury Demand and, after due proceedings had and legal delays, there be judgment rendered herein in favor of Plaintiff and against Defendant as detailed in the foregoing Complaint and Jury Demand, in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs of these proceedings, attorneys' fees and for any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

8

Fabian Strauss
(P.O. Box 41483)
(Lafayette, La., 70504)
(337-678-7108)
 In proper person