## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **FABIAN STRAUSS** | : | **CIVIL ACTION** |
| **VERSUS** | : | **NUMBER: 6:17-0235** |
| **UNIV. OF LA. SYS. BD. OF SUPERVISORS, ET AL.** | : | **DISTRICT JUDGE MICHAEL JUNEAU** |
| | : | **MAGISTRATE JUDGE CAROL WHITEHURST** |

---

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………………1

TABLE OF AUTHORITES………………………………………………………….…………2

FACTS AND PROCEDURAL HISTORY………………………………………….………3

LAW AND ARGUMENT………………………………………………………….……...4

Law on Summary Judgment………………………………………………….…………4

American with Disabilities Act and Rehabilitation Act Legal Standard…...……………….……...5

    A.  State Defendants provided Plaintiff with reasonable academic accommodations while at the University of Louisiana – Lafayette …………………………………………6

    B.  State Defendants did not discriminate against Plaintiff due to his disability................16

    C.  Plaintiff's request for Injunctive Relief is moot.........................................................20

CONCLUSION……………………………………………………………………….........21

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Alba-Cruz v. Ard*, 2018 U.S. Dist. LEXIS 206677 (M.D. La. Dec. 7, 2018)………………...6, 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)………...4

*Armstrong v. Turner Indus.*, 141 F.3d 554 (5th Cir. 1998)…………………...………………...…...21

*Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005)……………………………..6

*Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375 (5th Cir. 2016)……………16, 17, 18, 19, 20, 21

*Celotex Corp. v. Catrett*, 47 U.S. 317, 322 (1986)……………………………………………..5

*Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002)……………………...5, 17, 19

*E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009)………………………7, 16

*Eustice v. Tex. A&M Univ.*, 2016 U.S. Dist. LEXIS 136597 (S.D. Tex. Sep. 30, 2016)………...5, 6

*Feist v. La. Dep't of Justice, Office of the Attorney Gen.,* 730 F.3d 450, 452 (5th Cir. 2013)……16

*Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011)………………………………………………..6

*Halpern v. Wake Forest Univ. Health Servs.*, 669 F.3d 454, 461 (4th Cir. 2012)………...7, 16, 17

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1994), *cert. denied*, 502 U.S. 1059 (1992)………………………………………………………………………………..5

*Johnson v. Louisiana*, 2006 U.S. Dist. LEXIS 62093 (E.D. La. Aug. 30, 2006)…………………6

*Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)……………………………………………...5

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)…………………………………..5

*Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)……………………20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992)……………………………………………………………………………………..20

*Martel v. Evangeline Par. Sch. Bd.*, 2012 U.S. Dist. LEXIS 119219 (W.D. La. Aug. 21, 2012)…...7

*McGregor v. Louisiana State Univ. Bd. of Sup'rs,* 3 F.3d 850, 859 (5th Cir. 1993)……………17

*Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 573-74 (5th Cir. 2018)...6

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001)…………………………………………………………………………………...16, 17

*Sch. Bd. v. Arline*, 480 U.S. 273, 287 n.17, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987)………….16

*Smith v. Tangipahoa Par. Sch. Bd.*, 2006 U.S. Dist. LEXIS 85377 (E.D. La. Nov. 22, 2006)……15

*Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 413, 99 S. Ct. 2361, 2371, 60 L. Ed. 2d 980 (1979)………………………………………………………………………………………16

*U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002)……………………………………………………………………………………….7

*Wong v. Regents of University of California*, 192 F.3d 807, 817 (9th Cir. 1999)………………15

*Wynne v. Tufts University School of Medicine*, 932 F.2d 19, 25-26 (1st Cir. 1991)…………….15

**<u>Statutes</u>**

29 U.S.C. § 794(a)…………………………………………………..………......6, 16

29 U.S.C. § 794(d)…………………………………………………………………………5

34 C.F.R. § 104.44(a)…....…………………………………………………...…………16

42 U.S.C. § 12131(1)……………………………………………………………………...6

42 U.S.C. § 12132…………………………………………………………...…….6, 16

42 U.S.C. § 12133……….…………………………………………………………………5

Defendants, the State of Louisiana through the Board of Supervisors for the University of Louisiana System, University of Louisiana – Lafayette, and Dr. Carol Landry, in her official capacity (collectively "State Defendants"), respectfully request this Court grant their motion for summary judgment, as there is no genuine issue of material fact and movers are entitled to summary judgment as a matter of law for the following reasons:

## I.   FACTS AND PROCEDURAL HISTORY

On February 6, 2017, Fabian Strauss, ("Plaintiff"), filed suit against the Board of Supervisors for the University of Louisiana System, University of Louisiana – Lafayette, and Dr. Carol Landry, in her individual and official capacities.[1]  Plaintiff alleged that he is a student with bilateral hearing impairment at the University of Louisiana – Lafayette, ("ULL").  He alleged that he requested the following accommodations, prior to the 2013 fall semester:  housing for the hearing impaired, access to instructors' notes, a professional note-taker, preferential front row seating in all classes, a personal tutor, an interpreter or captionist, and assistive technology for deaf students.[2]  Plaintiff alleged that he was denied accommodations for housing. He further alleged that he was denied a professional note-taker and wasn't provided with student note-takers until October 2014 when he was provided a professional captionist.   Plaintiff alleged that the professional captionist did not provide adequate assistance because the professional captionist was offsite.  He further alleged that he requested the following accommodations, on February 5, 2016: preferential front row seating in all classes, a professional note-taker, access to instructors' notes, a personal amplification system for each class, housing for hearing impaired individuals, a personal tutor, an interpreter or captionist, and assistive technology for deaf students[3].  Plaintiff sued State

[1] R. Doc. 1.
[2] R. Doc. 1.
[3] R. Doc. 1.

Defendants alleging they failed to accommodate him in violation of Title II of the American with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA").[4]

On June 27, 2017, State Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) due to Dr. Landry not being able to be sued in her individual capacity under the provisions of ADA and RA, ULL not being a juridical entity and lacking procedural capacity to be sued, and that all of Plaintiffs' claims prescribed.[5] All of Plaintiff's claims were dismissed by this Honorable Court except the claim of failure to provide reasonable academic accommodations prior to February 5, 2016.[6] Plaintiff seeks compensatory damages for his academic performance, anxiety, and distress as well as an injunction preventing State Defendants from denying him reasonable accommodations while at ULL.[7]

## II.   LAW AND ARGUMENT

### A.   *Standard for Summary Judgment*

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact and the moving party is entitled to judgment as a matter of law.[8] Supporting affidavits must set forth facts which would be admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can show a reasonable jury that it is entitled to a verdict in its favor.[9]

---

[4] R. Doc. 1.
[5] R. Doc. 8.
[6] R. Doc. 20.
[7] R. Doc. 1.
[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[9] *Anderson v. Liberty Lobby, Inc., Id.*

This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[10] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial.[11] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in the favor of the non-moving party.[12] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[13]

State Defendants in this matter satisfied their initial responsibility in moving for summary judgment by informing this Honorable Court of the basis for their motion through the Statement of Uncontested material facts and attached exhibits. The attached exhibits are as follows:

Exhibit 1: Affidavit of Dr. Carol Landry, Director of the Office of Disability Services, University of Louisiana – Lafayette.
Exhibit 2: Affidavit of Phillip A. Kaufman, President/Chief Executive Officer, goDEPO Court Reporting & Litigation Support.
Exhibit 3: Deposition transcript of Fabian Strauss.

## B. *Legal Standard for ADA and RA Claims*

The RA and ADA both prohibit discrimination against qualified individuals with disabilities; they employ many of the same legal standards and offer the same remedies.[14] Title II

---

[10] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[11] *Celotex Corp. v. Catrett*, 47 U.S. 317, 322 (1986).
[12] *Little v. Liquid Air Corp., Id.*
[13] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1994), *cert. denied*, 502 U.S. 1059 (1992).
[14] *Eustice v. Tex. A&M Univ.*, 2016 U.S. Dist. LEXIS 136597 (S.D. Tex. Sep. 30, 2016); *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (per curiam) (citing *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002)); see also 29 U.S.C. § 794(d) (incorporating various ADA standards into Section 504); 42 U.S.C. § 12133 (incorporating Section 504's remedies into Title II of the ADA).

of the ADA prohibits discrimination on the basis of disability by any "public entity," defined as a state or local government, any "department, agency, special purpose district, or other instrumentality of a State or States or local government."[15] Similarly, the RA provides that a qualified individual with a disability will not "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[16]

To establish a claim under either statute "in the context of a student excluded from an educational program," a plaintiff must prove that: (1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.[17]

## C. *State Defendants provided Plaintiff with reasonable academic accommodations during his tenure at ULL*

In the present case, Plaintiff's sole remaining claim against State Defendants is the alleged failure to provide reasonable academic accommodations during his tenure at ULL.[18] The relevant inquiry into whether a requested accommodation is "reasonable" is whether it would impose "undue financial or administrative burdens" or would require a "fundamental alteration in the nature of the program."[19] Although determination of the reasonableness of a proposed modification is often fact-specific, a court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is

---

[15] *Eustice v. Tex. A&M Univ., Id.;* 42 U.S.C. §§ 12131(1), 12132.

[16] *Eustice v. Tex. A&M Univ., Id.;* 29 U.S.C. § 794(a).

[17] *Alba-Cruz v. Ard*, 2018 U.S. Dist. LEXIS 206677 (M.D. La. Dec. 7, 2018); *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 573-74 (5th Cir. 2018); (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam)).

[18] R. Doc. 1.

[19] *Johnson v. Louisiana*, 2006 U.S. Dist. LEXIS 62093 (E.D. La. Aug. 30, 2006); *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448 (5th Cir. 2005).

"reasonable on its face, i.e., ordinarily or in the run of cases," or if the defendant establishes as a matter of law that the proposed modification will cause "undue hardship in the particular circumstances."[20]

In *Martel v. Evangeline Parish School Board,* the United States District Court for the Western District of Louisiana noted that a reasonable accommodation may include "acquisition or modification of equipment or devices."[21] However, "the ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."[22] The Court noted that the accommodation . . . does not have to be the "best" accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated .... [T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.[23] This same standard of reasonable accommodations applies under the provisions of ADA and RA at educational institutions.

Dr. Carol Landry is the Director of the Office of Disability Services at ULL.[24] The Office of Disability Services is responsible for the coordination and implementation of disability services to students at ULL.[25] As director, she is responsible for ensuring that the program provides academic accommodations for University students under the mandates of Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and University policies.[26] During Plaintiff's tenure at ULL, Dr. Landry's office processed and approved the academic

---

[20] *Halpern v. Wake Forest Univ. Health Scis., Id.; U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002).
[21] *Martel v. Evangeline Par. Sch. Bd.*, 2012 U.S. Dist. LEXIS 119219 (W.D. La. Aug. 21, 2012).
[22] *Martel v. Evangeline Par. Sch. Bd., Id.; E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009).
[23] *Martel v. Evangeline Par. Sch. Bd., Id.*
[24] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 1.
[25] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 1.
[26] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 2.

accommodations provided to him. Each semester while enrolled at ULL, Plaintiff was approved for multiple academic accommodations.

Beginning in the Fall 2013 semester, Plaintiff was approved for the following academic accommodations: extended testing time, use of note-takers, and preferential seating in the front of each of his classes.[27] In the Spring 2014 semester, Plaintiff received the following accommodations: extended testing time, use of note-takers, preferential front-row seating.[28] In the Summer 2014 semester, Plaintiff received the following accommodations: extended testing time, use of note-takers, preferential front-row seating.[29]

In the Fall 2014 semester, in addition to the academic accommodations already approved for Plaintiff, ULL approved the usage of a Surf Link device, which is a device worn by a professor which feeds directly into a student's hearing aid.[30] All of Plaintiff's professors were required to wear this device during class in order to assist him with being able to hear the lectures and any questions asked during class.[31] To the best of his knowledge, Plaintiff admits that all of his professors used the Surf Link device in their classes as per the approved academic accommodations provided by the University.[32]

Additionally, during the Fall 2014 semester, ULL approved the usage of a remote captioning service. On October 1, 2014, Dr. Landry contacted Phillip A. Kaufman with goDEPO Court Reporting & Litigation Support ("goDEPO") with regards to providing CART services for Plaintiff.[33] goDEPO is a company which provides Communications Access Real-Time Translation

---

[27] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 6; Deposition of Fabian Strauss, Pg. 15.
[28] Exhibit 3, Deposition of Fabian Strauss, Pg. 30.
[29] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 6.
[30] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 7.
[31] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 7.
[32] Exhibit 3, Deposition of Fabian Strauss, Pg. 80-81.
[33] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 14.

(CART/Captioning) services for students in schools and universities throughout Louisiana.[34] goDEPO has been providing these services to students throughout Louisiana since 2014, as these services are provided through various onsite and remote CART providers who subcontract for goDEPO.[35] At the time of the request for CART services by Dr. Landry, goDEPO only had remote CART providers, which resulted in the CART provider being remotely based.[36] This is due to there being generally more remote providers available than onsite providers, especially in South Louisiana.[37] Mr. Kaufman worked diligently with Dr. Landry in obtaining the necessary equipment and software, which also resulted in ULL purchasing a high-end Martel HG-1 microphone, which is used widely in CART arenas to capture audio of the whole classroom.[38] ULL, at the recommendation of Mr. Kaufman, also purchased a Airline Micro Earset wireless microphone for Plaintiff, which Plaintiff was to give to each professor prior to class and retrieve at the end of class, which allows for the professor's voice to be very clear in the video conference audio allowing the remote CART provider to primarily focus on the professor's lecture.[39] Through remote captioning services provided by goDEPO, Plaintiff would bring his personal laptop to class, where he would link in remotely, via videoconference, wherein the CART provider's computer (usually working at home) is connected to the student's laptop in the classroom via the internet.[40] Once linked in, the captionist would hear and transcribe the lecture in real-time, so that the Plaintiff could read the lecture in class. Additionally, within 24-48 hours after the lecture, the captionist would send a verbatim transcript of the lecture to Plaintiff.[41] Mr. Kaufman met with Plaintiff on

[34] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 1.
[35] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 2.
[36] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 14.
[37] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 6.
[38] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 14.
[39] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 14.
[40] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 6.
[41] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 8.

ULL's campus in mid-October, 2014, to teach him how the captioning equipment and services worked prior to Plaintiff beginning to utilize the service. [42]

During the Spring 2015 semester, Plaintiff was approved for the following academic accommodations: extended testing time, use of note-takers, preferential front-row seating, usage of a Surf Link device, and remote captioning services.[43] As a result of technical difficulties Plaintiff experienced with the remote captioning services, ULL approved the usage of onsite captioning services, which began in March, 2015.[44]

It should be noted that remote CART services are provided via videoconferencing extensively throughout the United States due to the fact that in all but the largest metropolitan areas, there are not enough real-time capable court reporters and CART/Captioning providers to fill all the needs of students in universities and other types of schools nationwide.[45] Additionally, due to the extensive additional education, practice and skill development required to provide such services, very few people become capable of providing real-time CART captioning services. Therefore, the fact that the ULL and goDEPO sought out and was able to locate an onsite captionist for Plaintiff's classes, in itself, shows the persistence of ULL personnel in attempting to accommodate Plaintiff's needs. Once ULL initiated live captioning services, Plaintiff was able to utilize both remote and live captioning services during his classes.[46]

During the Spring 2016 semester, Plaintiff received the following academic accommodations: extended testing time, use of note-takers, preferential front-row seating, usage of a Surf Link Device, remote captioning services, live captioning services, and usage of his

---

[42] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 15.
[43] Exhibit 3, Deposition of Fabian Strauss, Pg. 48.
[44] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 9.
[45] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 13.
[46] Exhibit 3, Deposition of Fabian Strauss, Pg. 25.

professors' powerpoint presentations.[47] In the Fall 2016 semester, Plaintiff received the following academic accommodations: extended testing time, use of note-takers, preferential front-row seating, usage of a Surf Link Device, remote captioning services, live captioning services, and usage of his professors' powerpoint presentations.[48]  These same academic accommodations were provided to Plaintiff during the Spring and Fall semesters of 2017, until his graduation. ULL paid $50,258.15 for all of the academic accommodation equipment and services on behalf of Plaintiff during his tenure at the University.[49]

As noted previously, Plaintiff was provided with CART/Captioning services through goDEPO. These services included real-time remote voice writing reporting, onsite voice writing reporting, onsite stenotype and remote stenotype.[50] Through goDEPO, both stenotypists and voice writers were provided to Plaintiff, some remotely and some onsite.[51]

Real-time stenotype CART/Captioning services consist of an onsite trained captionist using a stenotype machine with a phonetic keyboard and special Computer-Aided Transcription (CAT) software.[52] The CAT software on a computer translates the phonetic symbols typed by the stenotypist into English text within a few seconds and displays it on the stenotypist's computer.[53] A slight delay may occur because of the captionist's need to hear and enter words, in addition to the computer's processing time.[54] Real-time stenotypists are in the highest demand of all court reporters and CART/Captioning providers because of their highly advanced skills. As a result, few

---

[47] Exhibit 3, Deposition of Fabian Strauss, Pg. 67.
[48] Exhibit 3, Deposition of Fabian Strauss, Pg. 70.
[49] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 14.
[50] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 3.
[51] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 12.
[52] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 7.
[53] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 7
[54] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 7.

real-time stenotypists in Louisiana elect to provide CART services to students, whether on-site or remotely, because most prefer to work in the legal testimony area.[55]

With onsite voice writing services, a stenomask is employed, whereas in remote CART/Captioning voice writing, an open mic mounted on a headset is employed because no one else is present in the room in which the voice writer is working (dictating) who would be distracted by the sound of the dictation.[56] A stenomask is a device similar to a CPAP mask for apnea which works as a silencing device, so that participants in the room with the voice writer will not be distracted by his/her dictation.[57] With the onsite voice writing services, the stenomask is placed over the mouth while the voice writer dictates what the speakers are saying into the mask/microphone. In remote voice writing, the voice writer, while listening through headphones to the live audio of the class via videoconferencing connection, dictates into the open mic.[58]

Real-time stenotype has been used in CART/Captioning for over 30 years. Voice writing has in the past 20 years become widely utilized and accepted nationwide for providing CART services to students.[59] "Real-time" transcription, via stenotype or speech recognition voice writing, is rarely perfect. Although most real-time captioning services have been estimated to be over ninety percent accurate, the audience will see occasional errors.[60] These errors are due to the captionist misunderstanding a word, untranslations in the stenotype dictionary, misrecognitions by the speech recognition software, dropped words and typos.[61] Therefore, whether the provider is a voice writer or a stenotypist, usually the evening after, they review the rough draft transcript,

---

[55] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 1
[56] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 10.
[57] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 10.
[58] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 10.
[59] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 4.
[60] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 4.
[61] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 4.

correcting obvious errors and typos, then email the student, thereby providing "class notes" to the student.[62]

Plaintiff made ULL aware of some of the difficulties he experienced with his academic accommodations. As a result, ULL took prompt action to address these problems. For example, due to Plaintiff's difficulties with understanding and missing information from course lectures, ULL approved the additional services of live and remote captioning services. Plaintiff advised ULL of technical difficulties he was experiencing with the captioning services. In early November, 2014, Plaintiff indicated that he was having problems understanding the process and getting equipment and connections set up successfully.[63] Mr. Kaufman met with Plaintiff again in mid-November 2014 to address how the equipment and services (connections) worked.[64] After this meeting, Plaintiff indicated that he understood the process. Plaintiff finished out the Fall 2014 semester without reporting any other concerns regarding the remote captioning services.[65] Additionally, due to technical difficulties Plaintiff experienced regarding the variations from the captioning services, ULL approved the usage of a digital recorder and external microphone. ULL provided Plaintiff with the digital recorder for the recording of the lectures, in addition to an external microphone so the person performing the remote captioning services could better hear what the Professor was saying.[66] In January 2015, as goDEPO was preparing to provide remote captioning services for Plaintiff during the Spring 2015 semester, Plaintiff expressed dissatisfaction with the connection issues encountered during the Fall 2014 semester, requesting that goDEPO provide onsite CART providers for the upcoming semester.[67] As a result of this

---

[62] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 11.
[63] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 15.
[64] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 15.
[65] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 15.
[66] Exhibit 3, Deposition of Fabian Strauss, Pg. 89-90.
[67] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 16.

request, ULL requested that goDEPO attempt to locate onsite CART providers to provide onsite captioning services for Plaintiff. While Mr. Kaufman was attempting to locate onsite CART providers to cover his class schedule, Plaintiff continued to use remote captioning services.[68] During the search for the onsite CART provider, Mr. Kaufman met with Plaintiff to diagnose the problems he was having. Plaintiff was not getting the equipment and software set up and adjusted properly.[69] Mr. Kaufman and Plaintiff discussed all of the connections required for the services to work properly, in which Plaintiff advised he understood.[70] Mr. Kaufman worked diligently to locate local providers to cover Plaintiff's needs onsite, and sometimes was successful.[71] Shortly thereafter, Mr. Kaufman was able to locate an onsite CART provider who would accept the assignment of providing onsite captioning services for Plaintiff.[72] Although Plaintiff experienced several difficulties with some of the services provided by both ULL and goDEPO, Dr. Landry and Mr. Kaufman, both made valiant efforts to address any and all complaints made by Plaintiff regarding his academic accommodations to the best of their abilities.

Plaintiff alleges that ULL did not provide effective accommodations based on ULL's failure to approve the usage of a professional note-taker.[73] This is the **only academic accommodation that was denied** by ULL.[74] The reason that this special academic accommodation was denied was due to the fact that this service is not one provided by the Office of Disability Services for **any student** who requests this accommodation through the university.[75] Instead, ULL uses volunteer note-takers, who are students, to assist disabled students with obtaining notes from

---

[68] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 16.
[69] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 16.
[70] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 16.
[71] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 17.
[72] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 16.
[73] Exhibit 3, Deposition of Fabian Strauss, Pg. 18.
[74] Exhibit 3, Deposition of Fabian Strauss, Pg. 18.
[75] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 12.

there courses.[76] Plaintiff also made numerous requests for use of his professors' personal notes. The Office of Disability Services does not mandate any professor provide copies of their personal lecture notes to ***any student***, thus Dr. Landry could not approve such a request.[77]

The denial of a special academic accommodation that is not one provided by ULL does not support the argument of academic accommodations being unreasonable. ULL provided a plethora of academic accommodations to assist the Plaintiff during his academic matriculation. The hiring of a professional note-taker for Plaintiff's courses would be financially burdensome for ULL. Furthermore, the approval of this service for the Plaintiff would require ULL to provide the same service to other students with disabilities, which would be even more financially burdensome. Plaintiff cannot show that ULL provided this service to any other student, as he was not sure whether ULL provided such a service to students with a disability.[78] Use of a professional note-taker is ***not*** a service that the University provides to any student. As such, it was appropriate for ULL to deny this request by the Plaintiff.

The jurisprudence makes clear, that deference is given to the institutions regarding situations similar to the present case, as schools are not required to substantially modify their program, where their accommodations are reasonable. Nevertheless, "[t]he educational institution has a 'real obligation … to seek suitable means of reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried out this statutory obligation.'"[79] It is worth noting that although Plaintiff claims that his academic accommodations were not reasonable while at ULL, after his graduation, he contacted Mr. Kaufman to inquire into

---

[76] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 12.
[77] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 11.
[78] Exhibit 3, Deposition of Fabian Strauss, Pg. 83.
[79] *Smith v. Tangipahoa Par. Sch. Bd.*, 2006 U.S. Dist. LEXIS 85377 (E.D. La. Nov. 22, 2006); *Wong v. Regents of University of California*, 192 F.3d 807, 817 (9th Cir. 1999)(quoting *Wynne v. Tufts University School of Medicine*, 932 F.2d 19, 25-26 (1st Cir. 1991)).

whether his office could arrange for one of their subcontracted real-time stenotype CART providers, who covered a fair amount of Plaintiff's classes and who had subsequently moved to Houston, could become one of the CART providers for the school that he is currently attending in Houston.[80]

As such, State Defendants aver that the academic accommodations provided to Plaintiff were reasonable in accordance with federal law, and denial of a special academic accommodation by ULL was well within its authority and reasonably justified.

## D. *State Defendants DID NOT discriminate against Plaintiff due to his disability*

Plaintiff alleges ULL intentionally discriminated against him due to his hearing disability.[81] In cases similar to the present one, the ADA and RA discrimination claim turns on whether the institution discriminated against the student based on their disability. Discrimination includes a failure to make reasonable accommodations.[82] However, an institution is not required to "lower or effect substantial modifications of standards to accommodate a handicapped person," if its standards are reasonable.[83] A disabled student does not have a right to his accommodation of preference.[84] A modification "is not reasonable if it either imposes undue financial and administrative burden. . . or requires a fundamental alteration in the nature of the program."[85] A

---

[80] Exhibit 2, Affidavit of Phillip A. Kaufman, Para. 19.

[81] R. Doc. 1.

[82] *Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375 (5th Cir. 2016); *Feist v. La. Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013); 42 U.S.C. § 12132; 29 U.S.C. § 794 (a).

[83] *Campbell v. Lamar Inst. of Tech, Id.; Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 413, 99 S. Ct. 2361, 2371, 60 L. Ed. 2d 980 (1979); see also 34 C.F.R. § 104.44(a).

[84] *Campbell v. Lamar Inst. of Tech, Id.; E.E.O.C. v. Agro Distribution, Id.*

[85] *Halpern v. Wake Forest Univ. Health Scis., Id.; Sch. Bd. v. Arline*, 480 U.S. 273, 287 n.17, 107 S. Ct. 1123, 94 L. Ed. 2d 307 (1987) (citation omitted) (quoting *Davis*, 442 U.S. at 410, 412) (internal quotation marks omitted); see also *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) (requiring that a modification be reasonable, be necessary, and not fundamentally alter the nature of the program).

modification to "an essential aspect" of the program constitutes a "fundamental alteration" and, therefore, is an unreasonable accommodation.[86]

A student may only recover compensatory damages upon a showing of intentional discrimination.[87] The showing of the alleged discriminatory act must show that it was 'intentional' in the sense that it was more than disparate impact."[88] When the record is "devoid of evidence of malice, ill-will, or efforts . . . to impede" a disabled student's progress, summary judgment must be granted in favor of the university.[89] In such a case, this court must defer to the university's academic decision not to alter its program.[90]

In *Campbell v. Lamar Inst. Of Tech*, 842 F.3d 375 (5th Cir. 2016), at issue was whether the school failed to act reasonably when it denied Campbell's request to take two exams in each of his courses, in addition to receiving an extra two weeks of study time after the other students had taken the exam. Campbell argues that his accommodation request was reasonable because it would not require fundamentally changing the Respiratory Care Program and it was supported by medical documentation. Campbell argued that the school was motivated by intentional discrimination in denying his request.[91] The United States Fifth Circuit Court of Appeals stated that deference was afforded to Lamar Institute of Technology because Campbell did not demonstrate that the school intentionally discriminated against him.[92] The United States Fifth Circuit Court of Appeals stated

---

[86] *Halpern v. Wake Forest Univ. Health Scis., Id.; PGA Tour*, 532 U.S. at 682-83.
[87] *Campbell v. Lamar Inst. of Tech, Id.; Delano-Pyle v. Victoria Cty., Tex., Id.*
[88] *Alba-Cruz v. Ard, Id.*; *Delano-Pyle v. Victoria County, Id.*
[89] *Campbell v. Lamar Inst. of Tech, Id; Delano-Pyle v. Victoria Cty., Tex., Id.*
[90] *Campbell v. Lamar Inst. of Tech, Id; Delano-Pyle v. Victoria Cty., Tex., Id.; Halpern v. Wake Forest Univ. Health Servs, Id.*
[91] *Campbell v. Lamar Inst. of Tech, Id.*
[92] *Campbell v. Lamar Inst. of Tech, Id.; McGregor v. Louisiana State Univ. Bd. of Sup'rs,* 3 F.3d 850, 859 (5th Cir. 1993)

that an institution is not duty bound to acquiesce in and implement every accommodation a disabled student demands.[93]

In the instant case, the Office of Disability Services has an established Disability Grievance and Appeals Procedure in place to address any and all claims of discrimination on the basis of a disability made by the student body. This procedure was established prior to Plaintiff's enrollment at ULL.[94] The procedure consists of an initial consultation with the Director of the Office of Disability Services for a remedy regarding the proposed academic accommodations. If not satisfied with the proposed solution, the second step consists of the student consulting with the Vice President of Student Affairs. If the student is not satisfied with the proposed solution, the third step is to take the matter to the Disability Concerns Committee.[95] Plaintiff did not take his appeal to the Disability Concerns Committee; he therefore failed to exhaust all of his options regarding appealing of his academic accommodations with the university.[96]

Instead, Plaintiff filed a complaint against ULL with the United States Department of Education, Office for Civil Rights alleging discrimination on the basis of his disability by not providing him accessible housing (special device fire alarm for hearing impaired) and auxiliary aids and services (regarding testing and note taking) during the 2014-2015 school year.[97] After investigating the complaint, the United States Department of Education, Office for Civil Rights, concluded that there was insufficient evidence to show that ULL discriminated against Plaintiff on the basis of his disability.[98]

---

[93] *Campbell v. Lamar Inst. of Tech, Id.*
[94] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 16.
[95] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 19-21.
[96] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 22.
[97] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 23.
[98] Exhibit 1, Affidavit of Dr. Carol Landry, Para. 24.

State Defendants maintain that the Plaintiff is unable to meet his burden of proof of establishing that ULL discriminated against him on the basis of his disability. While he alleges that ULL discriminated against him, he fails to show specific actions or inactions on the part of the university constituting discrimination. As previously noted, the burden of proof in showing intentional discrimination is through showing "malice, ill-will, or efforts. . . to impede" a disabled student's progress.[99] The only testimony that Plaintiff gave in support of a claim of intentional discrimination is Vice President Patricia Cottonham and Dean Perez "threatening" to terminate his accommodations, and that he did not receive "effective accommodations." However, Plaintiff, by his own admission, confirmed that none of his accommodations were ever terminated while he was at ULL.[100] The use of mere words without any specific action on behalf of the actor does not constitute a finding of intentional discrimination. Furthermore, he alleges that ULL personnel, specifically Vice President Patricia Cottonham, Dean Perez, and University President Dr. Joseph Savoie were copied on emails he sent to Dr. Landry regarding the difficulties he experienced with his academic accommodations. He also spoke with these individuals, advising them in person of the difficulties he was experiencing. These facts do not show any malice, ill-will or efforts to impede Plaintiff's progress at ULL. Dr. Landry did the best she could under the circumstances to accommodate any and all of Plaintiff's needs. There is no evidence to show that any actions of the ULL personnel rises to the legal standard of intentional discrimination, which is an essential element in ADA and RA claims against public entities. To the contrary, the evidence only shows that Plaintiff was approved for several academic accommodations and that when he experienced problems with them, Dr. Landry, as director of the Office of Disability Services, along with Mr.

---

[99] *Campbell v. Lamar Inst. of Tech, Id; Delano-Pyle v. Victoria Cty., Tex., Id.*
[100] Exhibit 3, Deposition of Fabian Strauss, Pg. 21.

Kaufman, as President/CEO of goDEPO, took action to correct the issues to the best of their abilities.

In the case *sub judice*, Plaintiff cannot meet his burden of proof in establishing a cause of action under the provisions of ADA and RA, thus State Defendants is entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

### E.   *Plaintiff's request for Injunctive Relief is moot*

Plaintiff requested that this Honorable Court issue an injunction, enjoining State Defendants from further denying him reasonable accommodations.[101] Unless enjoined, Plaintiff alleges that his education will be irretrievably harmed and his guaranteed rights and privileges under the ADA and RA will be unlawfully impinged and restricted.[102]

To establish Article III standing, a plaintiff must show: (1) an injury in fact that is concrete, particularized, and imminent, and is not conjectural or hypothetical; (2) a causal connection demonstrating that the injury is fairly traceable to the defendant's challenged actions; and (3) that it is likely—not simply speculative—that a favorable decision will redress the injury.[103]

In *Campbell v. Lamar Inst. of Tech, supra,* the United States Fifth Circuit Court of Appeals stated that Campbell's alleged prospective injury was entirely speculative, hypothetical, and lacked imminence, as Campbell withdrew from the school and has repeatedly stated that he would not return.[104] The likelihood of the school denying Campbell reasonable disability accommodations in the future was therefore too remote to state a cognizable injury in fact.[105] Because injunctive or

---

[101] R. Doc. 1.
[102] R. Doc. 1.
[103] *Campbell v. Lamar Inst. of Tech, Id.; Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992) (citations and quotation marks omitted).
[104] *Campbell v. Lamar Inst. of Tech, Id.*
[105] *Campbell v. Lamar Inst. of Tech, Id.; Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

declaratory relief against the school would not benefit Campbell, ***a non-student***, any possibility of future injury is not redressable by the Court and he lacks standing to assert a claim for equitable relief.[106]

Here, Plaintiff graduated from ULL in Fall 2017 with Honors. He is currently attending school at the University of Houston Downtown, where he is enrolled as a Chemistry major working towards another Bachelor's degree.[107] Similar to *Campbell*, due to the fact that injunctive relief would not benefit Plaintiff, ***a non-student***, any possibility of future injury is not redressable by the Court. As a result, Plaintiff lacks standing to assert a claim for equitable relief at this time. Therefore, Plaintiff's request for injunctive relief should be denied as moot.

## III.   CONCLUSION

State Defendants, the State of Louisiana through the Board of Supervisors for the University of Louisiana System, University of Louisiana – Lafayette, and Dr. Carol Landry, in her official capacity, are entitled to judgment in their favor as a matter of law and respectfully pray this Honorable Court grant their motion, dismissing all of Plaintiff's claims against them, with prejudice, at Plaintiff's cost.

---

[106] *Campbell v. Lamar Inst. of Tech, Id.; Armstrong v. Turner Indus.*, 141 F.3d 554 (5th Cir. 1998).
[107] Exhibit 3, Deposition of Fabian Strauss, Pg. 90.

Respectfully submitted,

**JEFF LANDRY,**
**ATTORNEY GENERAL**

BY:     /s/ *Jared E. Nelson*
        **JARED E. NELSON #38357**
        **Assistant Attorney General**
        **LOUISIANA DEPARTMENT OF JUSTICE**
        **DIVISION OF RISK LITIGATION**
        556 Jefferson Street, 4th Floor
        Lafayette, Louisiana 70501
        Telephone:     337-262-1700
        Facsimile:      337-262-1707
        E-mail:          nelsonj@ag.louisiana.gov

        *Counsel of Record for State Defendants- Dr. Carol*
        *Landry, University of Louisiana- Lafayette & Board*
        *of Supervisors for the University of Louisiana*
        *System*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the **24<u>th</u>** day of **July,** **2019**, the foregoing was filed

electronically with the Clerk of Court by using the CM/ECF system.  Notice of this filing will be

sent to all parties and/or counsel of record who participate in electronic filing by operation of the

court's electronic filing system.

Fabian R. Strauss,
through his attorney of record,
**Alex Z. Stanford (#35424)**
**Counsel for Plaintiff**
P.O. Box 1237
535 South Court Street
Opelousas, LA 70571
Email: stanfordlawcorp@gmail.com

Lafayette, Louisiana on this **24<u>th</u>** day of **July,** **2019**.

          *s/Jared E. Nelson*
          **Jared E. Nelson**
        **Assistant Attorney General**