UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **FABIAN STRAUSS** | : | **CIVIL ACTION** |
| **VERSUS** | : | **NUMBER: 6:17-0235** |
| **UNIV. OF LA. SYS. BD. OF SUPERVISORS, ET AL.** | : | **DISTRICT JUDGE MICHAEL JUNEAU** |
| | : | **MAGISTRATE JUDGE CAROL WHITEHURST** |

## AFFIDAVIT

**STATE OF LOUISIANA**

**PARISH OF LAFAYETTE**

   **BEFORE ME**, the undersigned counsel, personally came and appeared

**CAROL LANDRY, Ph. D.**

A resident and domiciliary of the Parish of Lafayette, Louisiana, and competent witnesses, who, based upon her personal knowledge, did depose and say that:

1.

   I am employed with the University of Louisiana at Lafayette as the Director of the Office of Disability Services. I have been the Director of the Office of Disability Services since March, 2005.

2.

   The Office of Disability Services is responsible for the coordination and implementation of disability services to students at the University of Louisiana at Lafayette. The program I oversee is charged with providing academic accommodations for University students under the mandates of Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and University policies.

3.

   Fabian Strauss was a student at the University of Louisiana at Lafayette from the Fall 2013 through the Fall 2017 semesters, during my tenure as Director of the Office of Disability Services.

4.

   While Mr. Strauss was a student at the University, he applied for special academic accommodations and modifications due to his impaired hearing disability.

5.

   The Office of Disability Services approved Mr. Strauss for special academic accommodations and modifications beginning in the Fall 2013 semester and through his academic matriculation at the University.

6.

Beginning in the Fall 2013 semester through the Summer 2014 semester, Mr. Strauss was approved for academic accommodations, including but not limited to the following: Extended Testing time (time and a half), the use of note-takers, and special seating arrangement to have Mr. Strauss seated on the front row in all of his courses.

7.

Beginning in the Fall 2014 semester, the University approved the usage of a Surf Link device, which is a device worn by the Professor which feeds directly into the student's hearing aid. All of Mr. Strauss's Professors were required to wear this device during class in order to assist him in being able to hear the lectures and any questions asked during class. Furthermore, the University approved the modification of Mr. Strauss's extended testing time from time and a half to double time.

8.

Furthermore, during the Fall 2014 semester, the University modified his academic accommodations by adding the usage of remote captioning services. Through remote captioning service, Mr. Strauss would bring his personal laptop to class, where he would link into the remote service. Once linked into the service, the captionist would be able to hear the lecture and transcribe the lecture for him to read in real time. Additionally, within 24-48 hours after the lecture, the captionist would send a verbatim transcript of the lecture to Mr. Strauss.

9.

After the addition of the remote captioning service, Mr. Strauss reported technical difficulties with the equipment. As a result, Mr. Strauss then requested a live captionist for each of his classes, in which the University conducted a search to accommodate him. As of March 17, 2015, the University provided live captionists for each of his classes.

10.

Mr. Strauss was allowed to take all of his examinations at the Office of Disability Services or through prior arrangements with his Professors. The testing environment that was provided to Mr. Strauss for all of his examinations was in accordance with his special academic accommodations provided by the University.

11.

Mr. Strauss made numerous requests for copies of his Professors' notes. These requests were not approved by the University because the notes are designed only to assist the professor in organizing and teaching the course. Therefore, the Office of Disability Services did not require the professors to provide copies of their personal lecture notes to any student.

12.

Mr. Strauss made numerous requests for a professional note taker. These requests were not approved, because the service requested is not one provided by the Office of Disability Services for ***any student*** who requests special academic accommodations through the University. Instead, Professors identified volunteer note takers for each course. The volunteers were students already enrolled in that particular course. Volunteer note takers agreed to attend all classes, send notes at a minimum of once per week, arrange for a substitute note taker if unavailable on a particular date, give notes to the student only on days that the student with the disability attends classes, inform the Office of Disability Services if they drop or withdraw from the class, and report any problems or concerns immediately to the Office of Disability Services in order to remedy them expeditiously.

13.

The University has multiple methods in place to ensure that accommodations are being handled appropriately. First, the University sends out an accommodation letter as the first official

method to communicate the accommodations to faculty. Additionally, email, phone and face-to-face contact is made with faculty when/if questions or complaints arise. To my knowledge, the Office of Disability Services did not receive any notifications from Mr. Strauss's Professors that his approved academic accommodations were not provided to him.

14.

The University of Louisiana at Lafayette paid $50,258.15 for academic accommodation equipment and services on behalf of Mr. Strauss.

15.

The Office of Disability Services continued to work with Mr. Strauss and his Professors to ensure that he received the requested academic accommodations throughout his academic matriculation at the University.

16.

Any and all complaints by students alleging discrimination on the basis of a disability is handled either internally by the University of Louisiana at Lafayette or by the United States Department of Education, Office for Civil Rights depending upon who the complaint was submitted to.

17.

The United States Department of Education, Office for Civil Rights is responsible for ensuring public entities, such as the University of Louisiana at Lafayette are in compliance with Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and any other applicable federal laws.

18.

The Office of Disability Services at the University of Louisiana at Lafayette has an established Disability Grievance and Appeals Procedure in place to address any and all claims of discrimination on the basis of a disability made by the student body. This procedure was established prior to the student attending the University.

19.

The first step in the Disability Grievance and Appeals Procedure is for any student who disagrees with the academic accommodations or other services that have been determined to speak with the Director of the Office of Disability Services. Upon meeting with the Director, the student should express their concerns and be prepared to offer alternative solutions.

20.

After consultation with the Director of the Office of Disability Services, if the student is still not satisfied regarding the proposed academic accommodations or the provision of accommodations, the second step in the Disability Grievance and Appeals Procedure is for the student to speak with the Vice President for Student Affairs, Patricia Cottonham.

21.

After consultation with the Vice President for Student Affairs, if the student is still not satisfied with the proposed academic accommodations or the provision of accommodations, the third step in the Disability Grievance and Appeals Procedure is for the student to take the matter to the Disability Concerns Committee.

22.

Mr. Strauss did not take his appeal before the Disability Concerns Committee. Therefore, he failed to exhaust all of his options regarding the appeal of his academic accommodations at the University level.

23.

Instead, Mr. Strauss filed a complaint against the University of Louisiana at Lafayette with the United States Department of Education, Office for Civil Rights alleging discrimination on the basis of his disability (hearing impairment) by not providing him accessible housing (special device fire alarm for hearing impaired) and auxiliary aids and services (regarding testing and note taking) during the 2014-2015 school year.

24.

After investigating the complaint filed by Mr. Strauss, the United States Department of Education, Office for Civil Rights informed my office of its conclusion that there was insufficient evidence to show that the University discriminated against Mr. Strauss on the basis of his disability.

25.

The University of Louisiana at Lafayette, Office of Disability Services maintains that it has not discriminated against Mr. Strauss in any manner based upon his disability.

26.

As Director of the Office of Disability Services at the University of Louisiana at Lafayette, my goal and intention to provide equal access to all programs and services for students with disabilities through the provision of academic accommodations.

27.

I am the best position to know the facts contained herein and that my aforementioned statement is true and correct to the best of my knowledge and belief.

_____
CAROL LANDRY, Ph. D.

**SWORN TO AND SUBSCRIBED** before me, NOTARY PUBLIC, this ___8th___ day of ___July___, 2019.

_____
**WITNESS**

_____
**WITNESS**

_____
NOTARY PUBLIC
Megan Donohue Breaux
Bar No. 32429

Page 4 of 4