UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **FABIAN STRAUSS** | : | **CIVIL ACTION** |
| **VERSUS** | : | **NUMBER: 6:17-0235** |
| **UNIV. OF LA. SYS. BD. OF SUPERVISORS, ET AL.** | : | **DISTRICT JUDGE MICHAEL JUNEAU** |
| | : | **MAGISTRATE JUDGE CAROL WHITEHURST** |

## AFFIDAVIT

**STATE OF LOUISIANA**

**PARISH OF LAFAYETTE**

**BEFORE ME**, the undersigned counsel, personally came and appeared

### PHILLIP A. KAUFMAN

A resident and domiciliary of the Parish of Lafayette, Louisiana, and competent witnesses, who, based upon his personal knowledge, did depose and say that:

1.

I am the President/ Chief Executive Officer of goDEPO Court Reporting & Litigation Support ("goDEPO"), a company which provides Communications Access Realtime Translation (CART/Captioning) services for students in schools and universities throughout Louisiana.

2.

goDEPO has provided services to students at five Louisiana institutions since 2014. These students have received services provided through various onsite and remote CART providers who subcontract for goDEPO.

3.

Several of our CART providers who provided services to Fabian Strauss have also provided like services to other students at the University of Louisiana – Lafayette, and to other institutions. The CART providers who provided captioning services to Mr. Strauss have included real-time remote voice writing reporting, onsite voice writing reporting, onsite stenotype and remote stenotype.

4.

Real-time stenotype has been used in CART/Captioning for over 30 years. Voice writing has in the past 20 years become widely utilized and accepted nationwide for providing CART services to students and television captioning as well. "Real-time" transcription, via stenotype or speech recognition voice writing, is rarely perfect. Although most real-time captioning services have been estimated to be over ninety percent accurate, the audience will see occasional errors. This is due to the captionist misunderstanding a word, untranslations in the stenotype dictionary, misrecognitions by the speech recognition software, dropped words and typos.

5.

Real time, whether stenotype or voice writing, requires extensive additional education, practice and skill development, in comparison to non-real-time court reporting. As a result, very few people become capable of providing real-time CART captioning services.

6.

Real-time CART/Captioning services can be provided by a CART provider onsite in the classroom or remotely via videoconference wherein the CART provider's computer (usually working at home) is connected to the student's laptop in the classroom via the Internet. The primary challenge for remote CART is ensuring that the connection between the two computers and the quality of the audio, particularly the professor's voice, are solid and clear. Both onsite and remote CART can be provided by either real-time capable stenotypists or voice writers. The deciding factor is that there are generally more remote providers available than onsite providers, especially in South Louisiana.

7.

Real-time stenotype CART/Captioning services consist of an onsite trained captionist using a stenotype machine with a phonetic keyboard and special Computer-Aided Transcription (CAT) software. The CAT software on a computer translates the phonetic symbols typed by the stenotypist into English text within a few seconds and displays it on the stenotypist's computer. A slight delay may occur because of the captionist's need to hear and enter the words and the computer's processing time.

8.

Real-time Stenotypists are in the highest demand of all court reporters and CART/Captioning providers because of their highly advanced skills.

9.

Few real-time Stenotypists in Louisiana elect to provide CART services to students, whether on-site or remotely because most prefer to work in the legal testimony arena.

10.

In onsite voice writing, a stenomask is employed, whereas in remote CART/Captioning voice writing, an open mic mounted on a headset is employed because no one else is present in the room in which the voice writer is working (dictating) who would be distracted by the sound of the dictation. A stenomask is a device similar to a CPAP mask for apnea which is fitted with a special microphone designed for dictating into speech recognition software, which works as a silencing device, so that participants in the room with the voice writer will not be distracted by his/her dictation. In onsite voice writing, the stenomask is placed over the mouth while the voice writer dictates what the speakers are saying into the mask/microphone. In remote voice writing, the voice writer, while listening through headphones to the live audio of the class via videoconference connection, dictates into the open-mic. Whether onsite or remote, the voice writer repeats (re-speaks) everything said by the professor, and as much as possible, the students with questions or comments into the stenomask or open-mic. The voice writer, just as the stenotypist, must also identify all speakers and insert most punctuation in the process. The stenomask or open-mic headset is connected to the voicewriter's computer, which is loaded with speech recognition software, thereby allowing the voice writer's dictation to be processed into text in the speech recognition CAT software that is displayed via the videoconference on the student's laptop within typically a few seconds (referred as real time), though it can delayed for a number seconds.

11.

Whether the provider is a voice writer or a stenotypist, sometime later, usually the evening after, they review the rough draft transcript, correcting obvious errors and typos and emails the transcript to the student thereby providing "class notes" to the student.

12.

Through goDEPO, both stenotypists and voice writers were provided to Mr. Strauss, some remotely and some onsite.

13.

Remote CART services are provided via videoconferencing extensively throughout the United States due to the fact that in all but the largest metropolitan areas, there are not enough real-time capable court reporters and CART/Captioning providers to fill all the needs for students in universities and other types of schools nationwide.

14.

Dr. Carol Landry, Director of the Office of Disability Services at the University of Louisiana- Lafayette ("ULL") contacted me on October 1, 2014 about providing CART services for Mr. Strauss. At the time, our office only had remote CART providers, which resulted in the CART provider being remotely based. I worked with Dr. Landry in obtaining the necessary equipment and software. Dr. Landry worked with the university technicians to facilitate Internet access in all classrooms. She purchased a high-end Martel HG-1 microphone used widely in CART arena to capture audio of the whole classroom. The university also purchased at my recommendation an Airline Micro Earset wireless microphone which Mr. Strauss was to give to each professor prior to class and retrieve at the end of the class, which allows for the professor's voice to be very clear in the video conference audio allowing the CART provider to focus on the professor's lecture.

15.

I met with Mr. Strauss on ULL's campus in mid-October, 2014 to teach him how the equipment and services worked. In early November, 2014, Mr. Strauss indicated that he was having problems understanding the process and getting equipment and connections set up successfully. I arranged to meet with him again. We met again in mid-November, 2014 to address how the equipment and services (connections) worked. After this meeting, he indicated that he understood the process. He finished out the Fall 2014 semester without reporting any other concerns regarding the remote captioning services.

16.

In January 2015, our office prepared to provide CART services for Mr. Strauss throughout the spring 2015 semester. Two days before classes were scheduled to start, Mr. Strauss expressed dissatisfaction with the connection issues encountered in the Fall 2014 semester, asking if my office could provide onsite CART providers for the upcoming semester. I attempted to locate onsite providers to cover his class schedule. During my office's search for onsite CART providers, Mr. Strauss continued to use remote captioning services. I met with Mr. Strauss again to diagnose the problems he was having. Mr. Strauss was not getting the equipment and software set up and adjusted properly. We discussed all of the connections required for the services to work properly. He advised that he understood the process. Shortly thereafter, I was able to locate an onsite CART provider to accept the assignment of providing onsite captioning services. However, this service could not be started until March, 2015. As a result, the first half of the Spring 2015 semester was covered by a remote captionist, while the second half of the semester was covered by a mixture of both onsite and remote captionists.

17.

From the Spring 2015 semester through the Fall 2017 semester, Mr. Strauss was provided with both remote and onsite stenotype and voice writing reporting services. I worked diligently to locate local providers to cover Mr. Strauss' needs onsite, and sometimes was successful. I also worked diligently to ensure Mr. Strauss received the best possible services and support, as did all the CART providers that covered these classes on behalf of goDEPO.

18.

I made every effort to ensure that any and all complaints regarding the equipment and services provided to Mr. Strauss were addressed immediately. Throughout Mr. Strauss's tenure at ULL, Dr. Landry kept in communication with me about the equipment and services being provided by our office, so that technical and equipment related problems could be resolved.

19.

After Mr. Strauss had graduated from ULL, Mr. Strauss contacted me to inquire whether I could arrange for one of our subcontract real-time stenotype CART providers who covered a fair amount of Mr. Strauss' classes, and who had subsequently moved to Houston where Mr. Strauss had begun studying at a different university, to seek to become one of the school's providers so she could cover his classes there.

20.

I am the best position to know the facts contained herein and that my aforementioned statement is true and correct to the best of my knowledge and belief.

*(signature)*
**PHILLIP A. KAUFMAN**

**SWORN TO AND SUBSCRIBED** before me, NOTARY PUBLIC, this _22nd_ day of _July_, 2019.

_____
**WITNESS**

_____
**WITNESS**

_____
**NOTARY PUBLIC**

LAURA L. BROUSSARD
NOTARY PUBLIC
NOTARY # 154606
STATE OF LOUISIANA
PARISH OF LAFAYETTE